Robert A. Sacks (SBN 150146)
sacksr@sullcrom.com
Brian R. England (SBN 211335)
englandb@sullcrom.com
Edward E. Johnson (SBN 241065)
johnsonee@sullcrom.com
SULLIVAN & CROMWELL LLP
1888 Century Park East, Suite 2100
Los Angeles, California 90067-1725
Tel.:  (310) 712-6600
Fax:  (310) 712-8800

Frank L. Bernstein (SBN 189504)
fbernstein@kenyon.com
KENYON & KENYON LLP
1801 Page Mill Road, Suite 210
Palo Alto, California 94304-1216
Tel.:  (650) 384-4700
Fax:  (650) 384-4701

*Attorneys for Defendants j2 Global, Inc. and Advanced Messaging Technologies, Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| INTEGRATED GLOBAL CONCEPTS, INC.<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>j2 GLOBAL, INC. and ADVANCED MESSAGING TECHNOLOGIES, INC.<br><br>　　　　　　Defendants. | Case No. CV12-03434 RMW<br><br>**DEFENDANTS j2 GLOBAL, INC. AND ADVANCED MESSAGING TECHNOLOGIES, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT PURSUANT TO RULE 12(b)(6) OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**<br><br>Date:  October 26, 2012<br>Time:  9:00 a.m.<br>Place:  Courtroom 6 |

# **TABLE OF CONTENTS**

**Page**

ARGUMENT ..................................................................................................................... 1

I.  IGC MISCHARACTERIZES JUDGE PREGERSON'S RULING. .............. 1

II. BASED ON THEIR UNAMBIGUOUS TERMS, j2 DID NOT BREACH THE RELEASE OR COVENANT NOT TO SUE AS A MATTER OF LAW. ...................................................................................... 2

    A. The Terms of the Release Unambiguously Do Not Cover j2's Patent Suit. ................................................................................... 2

    B. The Section 1542 Waiver Does Not Extend the Release in the Agreement of Understanding to Cover Future Claims. ....................... 4

    C. IGC's Arguments About Parol Evidence Are Meritless........................ 6

III. THE RELEASE AND COVENANT NOT TO SUE ARE VOID AS AGAINST PUBLIC POLICY IF THEY ENCOMPASS FUTURE PATENT INFRINGEMENT ........................................................................... 8

IV. IGC'S CLAIM IS BARRED BY COLLATERAL ESTOPPEL. .................... 9

V. THE CENTRAL DISTRICT OF CALIFORNIA IS A MORE APPROPRIATE VENUE BECAUSE j2 WILL BRING COUNTERCLAIMS HERE INVOLVING THE SAME PATENTS CURRENTLY BEING ADJUDICATED THERE. ........................................ 12

CONCLUSION .................................................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Block* v. *eBay, Inc.*,
  No. C 11-06718 CRB, 2012 U.S. Dist. LEXIS 63866 (N.D. Cal. May 7, 2012) .................................................................................................................... 7

*Brae Transp., Inc.* v. *Coopers & Lybrand*,
  790 F.2d 1439 (9th Cir. 1986) ........................................................................... 9

*Gilldorn Sav. Ass'n* v. *Commerce Sav. Ass'n*,
  804 F.2d 390 (7th Cir. 1986) ............................................................................ 11

*Jardin* v. *Datallegro, Inc.*,
  No. 08cv1462-IEG-RBB, 2009 U.S. Dist. LEXIS 3339 (S.D. Cal. Jan. 20, 2009) ........................................................................................................... 8

*Lizalde* v. *Advanced Planning Servs.*,
  No. 10-CV-834-AJB (RBB), 2012 U.S. Dist. LEXIS 86967 (S.D. Cal. June 22, 2012) ............................................................................................... 8, 9

*Logan* v. *ResMAE Mortg. Corp.*,
  No. 2:09-cv-01632-MCE-GGH, 2009 U.S. Dist. LEXIS 123814 (E.D. Cal. Dec. 23, 2009) ........................................................................................... 7

*Miles* v. *Am. Seafoods Co.*,
  197 F.3d 1032 (9th Cir. 1999) ........................................................................... 4

*Nelson* v. *Equifax Info. Servs., LLC*,
  522 F. Supp. 2d 1222 (C.D. Cal. 2007) ......................................................... 4, 5

*Porto Rico Railway, Light & Power Co.* v. *Mor*,
  253 U.S. 345 (1920) .......................................................................................... 3

*Rose* v. *Bethel*,
  No. 03 Civ. 1241 (GBD), 2007 U.S. Dist. LEXIS 63658 (S.D.N.Y. Aug. 28, 2007) ......................................................................................................... 11

*Skilstaf, Inc.* v. *CVS Caremark Corp.*,
  669 F.3d 1005 (9th Cir. 2012) ........................................................................... 7

*Stewart Org. Inc.* v. *Ricoh Corp.*,
  487 U.S. 22 (1988) .......................................................................................... 13

*TM Patents, L.P.* v. *Int'l Bus. Machines Corp.*,
  72 F. Supp. 2d 370 (S.D.N.Y. 1999) .............................................................. 11

*U.S. DOJ* v. *Hudson*,
  No. 1:06-CV-763 (FJS), 2007 U.S. Dist. LEXIS 62749 (N.D.N.Y. Aug. 24 2007) ......................................................................................................... 11

*In re Vehm Engineering Corp.*,
  521 F.3d 186 (9th Cir. 1975) ............................................................................. 4

**CALIFORNIA CASES**

*Larsen* v. *Johannes*,
  7 Cal. App. 3d 491 (1970) .................................................................................... 9

*Wholesale Tobacco Dealers Bureau of S. Cal., Inc.* v. *Nat'l Candy & Tobacco Co.*,
  11 Cal. 2d 634 (1938) ........................................................................................... 3

**FEDERAL RULES AND STATUTES**

28 U.S.C. § 1404 ........................................................................................................ 1

Fed. R. Civ. P. 12(b)(6) ....................................................................................... 1, 10

**CALIFORNIA STATUTES**

Cal. Civ. Code § 1542 ............................................................................................ 4, 5

Cal. Code Civ. Proc. § 1856(a) .................................................................................. 8

**OTHER AUTHORITIES**

18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure, § 4434 (2d ed. 2002) ................................................. 11

Restatement (Second) of Judgments § 13 (1982) .................................................... 11

**REPLY MEMORANDUM**

Defendants j2 Global, Inc. and Advanced Messaging Technologies, Inc. ("AMT"; collectively "j2" or "Defendants") respectfully submit their Reply in Support of Motion to Dismiss Plaintiff Integrated Global Concepts, Inc.'s ("IGC") Complaint Pursuant to Rule 12(b)(6) or, in the Alternative, to Transfer This Case to the Central District of California Pursuant to 28 U.S.C. § 1404.

**ARGUMENT**

Although IGC's Opposition brief is long and confusing, the issues presented by this Motion are straightforward. IGC's breach of contract claims[1] must be dismissed for three separate reasons: (i) the unambiguous language of the Agreement of Understanding establishes that j2 did not breach the agreement by filing a patent infringement suit against IGC; (ii) even if the language were ambiguous, if it were interpreted in the way IGC suggests, then the provisions at issue would be unenforceable as against public policy; and (iii) IGC's claims depend upon a construction of the Agreement of Understanding that previously was rejected in a case between the parties in the Northern District of Georgia, and therefore the claims are barred by collateral estoppel. Each of these independent bases for dismissal is addressed below, along with IGC's repeated mischaracterizations of Judge Pregerson's recent ruling in the Central District Action.

**I.    IGC MISCHARACTERIZES JUDGE PREGERSON'S RULING.**

IGC's Opposition repeatedly asserts—at least nine times—that the Hon. Dean D. Pregerson found j2's arguments "unpersuasive" or "inapposite" in ruling on IGC's motion to dismiss or stay the Central District Action. IGC badly

---

[1] Although IGC's complaint alleges multiple counts, all allege breaches of two provisions in the Agreement of Understanding entered into by JFAX (j2's predecessor) and IGC on June 30, 2000. The counts are treated collectively herein. IGC's Opposition does not identify any difference in the analysis of the different counts, or suggest that the counts should be treated separately.

-1-

mischaracterizes the ruling: Judge Pregerson expressly declined to rule on the issues that are before this Court. His order summarized each side's argument, and then concluded that "[i]n light of these reasonable arguments by both sides, the court finds that the best approach is to stay this case while the Northern District of California determines whether the Agreement's claims release and forum selection clause apply to j2's present claims." (Central District Action (Dkt. No. 23) at 4.) Thus, he deferred to this Court to determine the applicability of the Agreement of Understanding. Nothing in his Order suggests that he found IGC's arguments any more persuasive than j2's, much less rejected j2's arguments. (*Id.* at 3-4.)

## II. BASED ON THEIR UNAMBIGUOUS TERMS, j2 DID NOT BREACH THE RELEASE OR COVENANT NOT TO SUE AS A MATTER OF LAW.

### A. The Terms of the Release Unambiguously Do Not Cover j2's Patent Suit.

The release[2] covers only actions "arising from or related to any *past services, equipment, software or other assets provided by IGC to the Merger Parties* [*i.e.*, JFAX and eFax] whether pursuant to the Development Agreement, the Co-Location Agreement or any other agreement or understanding, whether written or oral (the "Merger Party Claims")." (Johnson Decl. Ex. B, Agreement of Understanding at 35, § 5(a) (emphasis added).) This language is unambiguous, and does not extend to j2's pending patent infringement suit against IGC. The release is limited to the "past" provision of services, equipment, software or other assets; j2's patent infringement suit relates to conduct that was, at that time, in the future: the infringement of patents that had not issued at the time the parties entered into Agreement of Understanding. The release is also limited to claims arising from services provided "to the Merger Parties." Thus it does not cover

---

[2] The covenant not to sue is no broader than the release, because it also is limited to "Merger Party Claims." (August 24, 2012 Declaration of Edward E. Johnson ("Johnson Decl.") Ex. B, Agreement of Understanding at 36, § 7.)

-2-

1  services provided by IGC to other parties, including the infringing services that
2  IGC today provides to consumers.  This is further illustrated by the clause that
3  follows, which specifies that the past services, equipment, software or other assets
4  may have been provided pursuant to either of the two agreements that (until the
5  Agreement of Understanding was signed) governed the relationship between eFax
6  and IGC, or any other agreement among the parties.  This language confirms that
7  the parties intended to address claims arising from their prior relationship, as
8  opposed to future intellectual property claims, which would not be "pursuant to"
9  any prior agreement among the parties.
10              IGC makes two principal arguments to avoid this clear language.
11  *First*, IGC argues that "j2 offers a grammatically incorrect interpretation [by]
12  arguing that the Court should interpret 'past services, equipment, software or other
13  assets provided by IGC to the Merger Parties [*i.e.*, j2 and eFax]' to mean *past*
14  services, *past* equipment, *past* software, and *past* other assets."  (Opp. at 8.)  It is
15  IGC's grammar that is incorrect.  As both the U.S. and California Supreme Courts
16  have held, a modifier next to a list modifies each element in the list.  *See Porto*
17  *Rico Railway, Light & Power Co.* v. *Mor*, 253 U.S. 345, 348 (1920) ("When
18  several words are followed by a clause which is applicable as much to the first and
19  other words as to the last, the natural construction of the language demands that the
20  clause be read as applicable to all."); *Wholesale Tobacco Dealers Bureau of S.*
21  *Cal., Inc.* v. *Nat'l Candy & Tobacco Co.*, 11 Cal. 2d 634, 659 (1938) (holding that
22  modifier applied to all the words in a list).  Thus, the phrase at issue is properly
23  interpreted to mean past services, past equipment, past software, and past other
24  assets, and so is limited to claims arising from services provided up to the
25  execution of the Agreement of Understanding.
26              *Second*, IGC argues that the "past" limitation is irrelevant because
27  IGC's MaxEmail service has not changed since the contract was signed.  (Opp. at
28  12.)  Assuming *arguendo* that this is true, it misses the point.  The release covers

claims arising from the past provision of services, equipment or software. It does not cover the future provision of services, equipment or software, regardless of whether the services provided in the future are the same as the ones provided in the past. Under IGC's logic, if a consumer buys a TV and later releases the manufacturer from any claim arising from the "past provision of TVs," then the release would also cover a subsequent purchase of the same model of TV. Neither the law nor the language of the release permits such an absurd conclusion. The release cannot be read to prospectively waive *any* claim related to IGC's service, in perpetuity.

### B. The Section 1542 Waiver Does Not Extend the Release in the Agreement of Understanding to Cover Future Claims.

IGC argues that the waiver of Section 1542 in the Agreement of Understanding constitutes a "general release" that covers j2's patent infringement claims in perpetuity. (Opp. at 14, 17-18.) That argument misunderstands the nature of a Section 1542 waiver. Section 1542 of California's Civil Code provides that a general release does not cover claims which are unknown at the time the contract is executed. Parties may waive Section 1542, but by doing so they merely give full effect to whatever release they agreed upon, which otherwise would be limited by Section 1542. The Section 1542 waiver is not an independent release and it cannot extend the scope of j2's release to cover claims which are not covered by the terms of the release itself.

Nor does a Section 1542 waiver somehow release claims based upon future conduct, as distinct from unknown claims based upon past conduct. A release, even when accompanied by a Section 1542 waiver, "does not apply to claims arising from subsequent conduct occurring after the execution of a release." *Nelson* v. *Equifax Info. Servs., LLC*, 522 F. Supp. 2d 1222, 1231 (C.D. Cal. 2007) (internal citations omitted)); *see also Miles* v. *Am. Seafoods Co.*, 197 F.3d 1032, 1034 (9th Cir. 1999) (claim not covered by release when conduct occurred after the

-4-

release was signed). This is true even if there is "an explicit release of all claims . . . including unknown claims pursuant to a [Section 1542] waiver." *Equifax*, 522 F. Supp. 2d at 1230; *see also In re Vehm Engineering Corp.*, 521 F.3d 186, 188 (9th Cir. 1975). Section 1542 waivers allow parties to extend releases to cover unknown claims based on conduct that has already occurred at the time of the release, not claims that are unknown because they have not yet arisen. *Equifax*, 522 F. Supp. 2d at 1231. The Opposition fails to address these cases or cite any authority suggesting that a Section 1542 waiver applies to future conduct.[3]

   Moreover, the limited applicability of a Section 1542 waiver—to unknown claims based upon past conduct, as opposed to future conduct—is emphasized by the language of the Section 1542 waiver provision in the Agreement of Understanding. It provides that "[n]othing in Section 4 or Section 5 [the releases] extends to claims for breach of any party's obligations under this Agreement, the Registration Rights Agreement, the Software License Agreement <u>or any services performed after the Closing Date</u> pursuant to the Co-Location Agreement, this Agreement, including the Transition and Post-Termination Services (as defined in Section 9(b)), or any separate written agreement executed after the date of this Agreement." (Johnson Decl. Ex. B, Agreement of Understanding at 35, § 6 (emphasis added).) Thus, with respect to the various agreements among the parties, the Agreement of Understanding expressly limits the scope of the Section 1542 waiver to past conduct. Of course, conduct unrelated to the various agreements among the parties—such as patent infringement—is not

---

[3] IGC asserts that "the parties expressly agreed to waive future claims" in the Section 1542 waiver. (Opp. at 15.) But the provision does not say that. IGC cites language stating "[e]ach of IGC, eFax and JFAX waives all rights and benefits which it now has *or in the future may have* under" Cal. Civ. Code § 1542. That language does not refer to future claims; it refers to future rights under Section 1542, *i.e.*, the right to invoke Section 1542 in defense of claims brought in the future.

expressly mentioned because nothing in the release has anything to do with conduct unrelated to the agreements among the parties, as set forth above.

As such, IGC's argument that j2 knew about its patent claims when it executed the Agreement of Understanding is irrelevant. (Opp. at 10-11.) Even assuming IGC is correct that j2 had actual knowledge of a potential patent claim, which it is not,[4] the conduct giving rise to j2's patent infringement claims necessarily occurred after the Agreement of Understanding was executed, because at the time the agreement was executed none of the patents at issue in the Central District Action had issued. Therefore, the Section 1542 waiver cannot extend the release to cover j2's patent infringement claims.

### C. IGC's Arguments About Parol Evidence Are Meritless.

IGC makes two arguments concerning parol evidence, neither of which has merit. First, IGC argues that j2's motion should be denied because j2 relied upon parol evidence outside the pleadings. (Opp. at 18-19, 20-21.) That is incorrect. The motion relied exclusively on the allegations of IGC's complaint and documents that are properly subject to judicial notice. IGC complains about the number of documents j2 submitted, but only contests whether judicial notice was proper as to one of them—a letter sent by IGC's counsel. (Opp. at 21.) IGC fails to mention that the letter was a letter brief sent *to the Court* in the Georgia Action in response to a request for supplemental submissions concerning a motion to dismiss. j2's motion did not ask this Court to consider the letter for the truth of the claims therein (*i.e.*, IGC's arguments that its contract claim should not be dismissed), but for the fact that IGC made those claims.

---

[4] IGC's argument that j2 knew about claims on patents that had not issued defies logic. A patent application is not a patent. The application may be rejected, or could issue with claims significantly different from those in the original application. For example, the original application for the '638 Patent included a single claim, but the patent ultimately issued with 22 claims. Patent applications cannot be enforced and the applicant has no "claim" based upon the application.

j2's Motion did discuss the context in which the Agreement of Understanding was entered into, but that context came from IGC's allegations and the recitals in the Agreement of Understanding itself.  (*See, e.g.*, Johnson Decl. Ex. B, Agreement of Understanding at 32, Recitals; Compl. ¶¶ 17-32.)  Within the four corners of the contract, the recitals explain that at the time the parties entered into the contract, jFax and a company called eFax were preparing to merge.  (Johnson Decl. Ex. B, Agreement of Understanding at 32, Recitals.)  Furthermore, eFax and IGC were engaged in a payment dispute regarding software IGC had developed for eFax and that eFax, jFax, and IGC "desire[d] to fully and completely settle all issues and outstanding claims between eFax and IGC prior to the merger."  *Id.* IGC's allegations also make clear that the Agreement of Understanding was intended in large part to resolve a payment dispute concerning past services provided by IGC to eFax.  (Compl. ¶ 29-33; Opp. at 5.)  Given this context in which the agreement arose, which is undisputed and properly considered on this motion, it is unsurprising that the release was expressly limited to claims arising from the past services that had already given rise to the payment dispute that was the impetus for the agreement.

Alternatively, IGC claims that it is entitled to present parol evidence itself before the Court dismisses the case.  (Opp. at 20.)  But dismissal of a breach of contract claim on a Rule 12(b)(6) motion is proper where, as here, the contract is unambiguous.  *See Block* v. *eBay, Inc.*, No. C 11-06718 CRB, 2012 U.S. Dist. LEXIS 63866, at *5-6 n.3 (N.D. Cal. May 7, 2012); *Skilstaf, Inc.* v. *CVS Caremark Corp.*, 669 F.3d 1005, 1018 (9th Cir. 2012).  Moreover, IGC was free to allege whatever parol evidence it believes is relevant, but the Opposition fails to identify any allegation that, if substantiated, would change the result.  And, in any case, the parol evidence rule "prohibits the introduction of any extrinsic evidence, whether oral or written, to vary, alter or add to the terms of an integrated written instrument intended by the parties to be the final expression of their agreement."  *Logan* v.

-7-

*ResMAE Mortg. Corp.*, No. 2:09-cv-01632-MCE-GGH, 2009 U.S. Dist. LEXIS 123814, at *11 (E.D. Cal. Dec. 23, 2009) (citing Cal. Code Civ. Proc. § 1856(a)). The interpretation that IGC proposes—that the release covers claims arising from the future provision of services to anyone—cannot be reconciled with the language of the contract it entered into, which limits the release to the past provision of services to the Merger Parties.[5] Therefore parol evidence cannot help IGC.

## III. THE RELEASE AND COVENANT NOT TO SUE ARE VOID AS AGAINST PUBLIC POLICY IF THEY ENCOMPASS FUTURE PATENT INFRINGEMENT.

IGC argues that the release is a "general release" that applies to j2's pending patent claims regardless of whether those claims were known to j2 at the time it executed the Agreement of Understanding. (Opp. at 14.) Indeed, IGC claims that j2 breached the release and covenant not to sue by asserting infringement of the '066 Patent, which j2 did not apply for and did not purchase until years later. Thus, if the Court construes the Agreement of Understanding as IGC asks, then the release and covenant not to sue would preclude *any* future patent infringement lawsuit by j2 against IGC, including suits based on patents that have not yet issued today, over a decade after the parties entered into the Agreement of Understanding. Such a sweeping waiver of future unknown federal intellectual property rights would be void as against public policy. *See Lizalde* v. *Advanced Planning Servs.*, No. 10-CV-834-AJB (RBB), 2012 U.S. Dist. LEXIS 86967, at *22 (S.D. Cal. June 22, 2012) (quoting *FASA Corp.* v. *Playmates Toys, Inc.*, 892 F. Supp. 1061, 1066-68 (N.D. Ill. 1995)); *Jardin* v. *Datallegro, Inc.*, No. 08cv1462-IEG-RBB, 2009 U.S. Dist. LEXIS 3339, at *16 (S.D. Cal. Jan. 20, 2009).

---

[5] IGC refers at least seven times to its allegation that j2 drafted the Agreement of Understanding. These references are disingenuous and misleading. The Agreement of Understanding provides that it "will not be construed against the party preparing it, but will be construed as if prepared by all parties." (Johnson Decl. Ex. B at 52, § 27.18.)

-8-

1    IGC argues that "under California law, this [public policy on
2 intentional torts] exception is not applicable to commercial transactions like the
3 Agreement of Understanding," suggesting that the exception only applies to
4 unsophisticated parties. (Opp. at 15-16.) That argument cannot be squared with
5 the cases cited by j2, all of which involve sophisticated parties. In *Lizalde*, for
6 example, the dispute arose out of three related contracts entered into by an
7 assortment of corporate entities and their principals. No. 10-CV-834-AJB (RBB),
8 2012 U.S. Dist. LEXIS 86967, at *4.

9    Moreover, the cases cited by IGC deal with contract claims, not
10 intellectual property infringement or any other intentional tort. *See, e.g.*, *Brae
11 Transp., Inc.* v. *Coopers & Lybrand*, 790 F.2d 1439, 1440-41 (9th Cir. 1986)
12 (involving contract claim regarding a stock purchase agreement); *Larsen* v.
13 *Johannes*, 7 Cal. App. 3d 491, 496 (1970). Nor do these cases address the
14 enforceability of waivers of liability for *future* misconduct. For example, in *Brae
15 Transport*, the issue was whether a release in a stock purchase agreement covered a
16 claim that the acquiree had overstated its value. *See* 790 F.2d at 1440-41. The
17 claim was unknown when the release was executed, but the alleged overstatement
18 had already occurred. *See id*. These cases are therefore inapposite.

19 **IV.   IGC'S CLAIM IS BARRED BY COLLATERAL ESTOPPEL.**

20    The scope of the release and covenant not to sue has already been
21 decided in litigation between j2 and IGC in the Northern District of Georgia, and
22 that prior decision requires dismissal of this suit.

23    In the Northern District of Georgia, j2's subsidiary sued IGC for
24 patent infringement based upon a set of patents that j2 was aware of, but did not
25 own, at the time the Agreement of Understanding was executed. IGC
26 counterclaimed for breach of contract, alleging that the patent infringement claims
27 breached the release and covenant not to sue in the Agreement of Understanding,
28 based upon a proposed construction of those provisions identical to the

-9-

construction IGC asserts here. (Johnson Decl. Ex. A, Georgia Decision.) The Court adopted j2's argument—again, the same argument j2 makes here—and dismissed IGC's breach of contract claim on a Rule 12(b)(6) motion. (*Id.*)

IGC argues that its claim is not barred by collateral estoppel for two reasons. (Opp. at 21-23.) First, IGC argues that it has made allegations in its complaint here that it did not make in the Georgia case. But IGC's allegations cannot alter the plain meaning of the provisions at issue. And, if IGC believed that un-pled facts were material to the Georgia Court's decision, it could have alleged them. The Court gave IGC an opportunity to amend its complaint. (Johnson Decl. Ex. A at 28-29.) IGC declined to do so, effectively admitting that it could not add allegations that would alter the outcome. Instead of re-pleading, IGC asserted effectively the same breach of contract claim here, and claims that the allegations it could have pled in the Georgia action, but chose not to, somehow require a different result. That is precisely the sort of tactic that the collateral estoppel doctrine prohibits. IGC had a full and fair opportunity to litigate this issue in Georgia, and is not entitled to rehash the issue here.[6]

Second, IGC confuses the standard for issue preclusion with the standard for claim preclusion. IGC argues that "[t]he finality test for appealability of a federal judgment controls the finality determination for *claim* preclusion purposes." (Opp. at 23 (emphasis added).) j2 is not asserting claim preclusion.

In contrast to claim preclusion, "finality in the context of collateral estoppel 'may mean little more than that the litigation of a particular issue has

---

[6] IGC also complains that it argued its breach of contract claim in a letter brief instead of a formal brief. (Opp. at 22.) But IGC invited the problem it complains about, by choosing to assert a breach of the Agreement of Understanding in the letter brief rather than formally amending its complaint. Further, IGC was free to include whatever argument it wanted in the letter brief, which was not page-limited, and could have requested additional briefing or sought rehearing after the ruling. And IGC could have amended its complaint after the ruling. In short, IGC invited the Court to rule on the Agreement of Understanding and then failed to take any of the multiple steps available to it if it believed that further consideration by the Georgia Court was warranted.

1 reached such a stage that a court sees no really good reason for permitting it to be
2 litigated again.'" *U.S. DOJ* v. *Hudson*, No. 1:06-CV-763 (FJS), 2007 U.S. Dist.
3 LEXIS 62749, at *13 (N.D.N.Y. Aug. 24 2007) (internal quotations omitted); *see*
4 *also* Restatement (Second) of Judgments § 13 (1982) ("for purposes of issue
5 preclusion . . . 'final judgment' includes any prior adjudication of an issue in
6 another action that is determined to be sufficiently firm to be accorded conclusive
7 effect.'"). "Therefore, federal courts have expanded application of collateral
8 estoppel beyond the traditional context of appealable final judgments to decisions
9 including partial summary judgment, settlement, default judgment, and other
10 pretrial motions." *Hudson*, 2007 U.S. Dist. LEXIS 62749, at *14 (citing 18A
11 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and
12 Procedure, § 4434 (2d ed. 2002)). "Collateral estoppel 'does not require a
13 judgment which ends the litigation . . . and leaves nothing for the court to do but
14 execute the judgment,' . . . but includes many dispositions which, although not
15 final in that sense, have nevertheless been fully litigated." *TM Patents, L.P.* v. *Int'l*
16 *Bus. Machines Corp.*, 72 F. Supp. 2d 370, 376 (S.D.N.Y. 1999) (citations omitted).

17    It is well-established that a ruling on a motion to dismiss is
18 sufficiently final to have collateral estoppel effect. *See Hudson*, 2007 U.S. Dist.
19 LEXIS 62749, at *14 n.6 (noting that a "motion to dismiss sufficiently final for
20 collateral estoppel purposes even though there was no written opinion and the
21 decision was not appealable"); *Gilldorn Sav. Ass'n* v. *Commerce Sav. Ass'n*, 804
22 F.2d 390, 392-94 (7th Cir. 1986) (same); 18A Charles Alan Wright, Arthur R.
23 Miller & Edward H. Cooper, Federal Practice and Procedure, § 4434 n.18 (2d ed.
24 2012) ("Although there had not been a final judgment, an order denying a motion
25 to dismiss for failure to state a claim may be sufficiently final to establish
26 preclusion with respect to the issue decided."); *Rose* v. *Bethel*, No. 03 Civ. 1241
27 (GBD), 2007 U.S. Dist. LEXIS 63658 (S.D.N.Y. Aug. 28, 2007). Thus, the
28

Georgia Court's dismissal of IGC's breach of contract claim is final for collateral estoppel purposes and compels dismissal of IGC's claim here.[7]

## V. THE CENTRAL DISTRICT OF CALIFORNIA IS A MORE APPROPRIATE VENUE BECAUSE j2 WILL BRING COUNTERCLAIMS HERE INVOLVING THE SAME PATENTS CURRENTLY BEING ADJUDICATED THERE.

In the alternative, if this Court does not dismiss IGC's Complaint, j2 will bring patent counterclaims here asserting the same patents at issue in the Central District Action. These same patents are also currently being adjudicated in six cases pending before the Hon. Dean D. Pregerson in the Central District. Absent transfer, this Court will be forced to expend significant resources simultaneously adjudicating the same issues that are before Judge Pregerson, including claim construction of four patents, with the corresponding risk of inconsistent rulings.

IGC offers no evidence for its contention that transferring the case back to Judge Pregerson would "only further magnify the damages suffered by IGC . . . ." (Opp. at 23.) IGC is a foreign citizen with little, if any, connection to the Northern District of California, a forum that has *no connection* to either IGC (headquartered in Chicago) or j2 (headquartered in Los Angeles).[8] Litigating in this District will be just as expensive for IGC and more expensive for j2. The only reason j2 can discern for IGC's insistence upon litigating in this District is judge-shopping: Judge Pregerson has previously issued a *Markman* ruling favorable to j2, and IGC hopes for a different result in this Court.

---

[7] Unlike the Northern District of Georgia decision, which squarely addressed the issue of contract interpretation that is dispositive of IGC's claim here, Judge Pregerson's ruling staying the case in the Central District of California expressly declined to rule on that issue, and instead deferred to this Court. (Central District Action (Dkt. No. 23) at 4.) Therefore, the Central District ruling does not have collateral estoppel effect.

[8] This forum presumably was selected in the Agreement of Understanding because eFax, which merged into j2 and therefore has been defunct for over a decade, was based in this District.

-12-

Even assuming that the forum selection clause in the Agreement of Understanding is applicable, the Supreme Court has held that a "forum-selection clause, which represents the parties' agreement as to the most proper forum, should receive neither dispositive consideration . . . nor no consideration." *Stewart Org. Inc.* v. *Ricoh Corp.*, 487 U.S. 22, 31 (1988). Rather, "[i]t is conceivable . . . that because of these [convenience, public-interest, and fairness] factors a district court acting under § *1404(a)* would refuse to transfer a case notwithstanding the counterweight of a forum-selection clause, whereas the coordinate state rule might dictate the opposite result." *Id.* at 30-31. This just such a case.

Finally, IGC's attempt to enforce the forum clause should be rejected in light of IGC's decision to file a breach of contract suit in another District in 2006. IGC's argument that "[t]here is no way IGC could knowingly waive its right to enforce the forum selection clause in a lawsuit filed in 2012 when it filed counterclaims in the Georgia case in 2006," is meritless and ironic. (Opp. at 24.) IGC waived the clause by choosing to disregard it when it was inconvenient, regardless of whether it anticipated this lawsuit. Moreover, IGC's breach of contract claim is essentially that j2 waived all possible future claims, whether it knew of them or not, by signing the Agreement of Understanding. IGC's attempt to limit its waiver of the forum selection clause to "known" claims is contrary to that argument and suggests that even IGC realizes the infirmity of its breach of contract claim.

## CONCLUSION

For the foregoing reasons, j2 respectfully requests that the Court dismiss IGC's complaint.

Dated: September 28, 2012

Respectfully submitted,

/s/ Robert A. Sacks
Robert A. Sacks (SBN 150146)
Brian R. England (SBN 211335)
Edward E. Johnson (SBN 241065)
SULLIVAN & CROMWELL LLP
1888 Century Park East, Suite 2100
Los Angeles, California 90067-1725
(310) 712-6600
(310) 712-8800 facsimile

Frank L. Bernstein (SBN 189504)
KENYON & KENYON LLP
1801 Page Mill Road, Suite 210
Palo Alto, California 94304-1216
(650) 384-4700
(650) 384-4701 facsimile

*Attorneys for Defendants j2 Global, Inc. and Advanced Messaging Technologies, Inc.*