1   Robert A. Sacks (SBN 150146)
    sacksr@sullcrom.com
2   Brian R. England (SBN 211335)
    englandb@sullcrom.com
3   Edward E. Johnson (SBN 241065)
    johnsonee@sullcrom.com
4   SULLIVAN & CROMWELL LLP
    1888 Century Park East, Suite 2100
5   Los Angeles, California 90067-1725
    Tel.:   (310) 712-6600
6   Fax:   (310) 712-8800

7   Frank L. Bernstein (SBN 189504)
    fbernstein@kenyon.com
8   KENYON & KENYON LLP
    1801 Page Mill Road, Suite 210
9   Palo Alto, California 94304-1216
    Tel.:   (650) 384-4700
10  Fax:   (650) 384-4701

11  *Attorneys for Defendants j2 Global, Inc. and*
    *Advanced Messaging Technologies, Inc.*

12

13              **UNITED STATES DISTRICT COURT**

14            **NORTHERN DISTRICT OF CALIFORNIA**

15                    **SAN JOSE DIVISION**

16

| | |
|---|---|
| 17  INTEGRATED GLOBAL CONCEPTS, INC. | )    Case No. CV 12-03434 RMW |
| 18            Plaintiff, | )    **DEFENDANTS' REPLY IN** |
| 19      v. | )    **SUPPORT OF MOTION TO DISMISS COUNTS IV, V, AND** |

17   INTEGRATED GLOBAL
     CONCEPTS, INC.                    )   Case No. CV 12-03434 RMW
18                                     )
                         Plaintiff,    )   **DEFENDANTS' REPLY IN**
19                                     )   **SUPPORT OF MOTION TO**
              v.                       )   **DISMISS COUNTS IV, V, AND**
20                                     )   **PRAYER FOR PUNITIVE**
     j2 GLOBAL, INC. and               )   **DAMAGES OF PLAINTIFF**
21   ADVANCED MESSAGING                )   **INTEGRATED GLOBAL**
     TECHNOLOGIES, INC.                )   **CONCEPTS, INC.'S**
22                                     )   **COUNTERCLAIMS PURSUANT**
                         Defendants.   )   **TO FED. R. CIV. P. 12(b)(6)**
23                                     )
                                       )   Date:  June 28, 2013
24                                     )   Time:  9:00 a.m.
                                       )   Place:  Courtroom 6
25                                     )

26

27

28

1       Defendants j2 Global, Inc. and Advanced Messaging Technologies,

2 Inc. ("AMT") (collectively "j2" or "Defendants") hereby respectfully submit their

3 Reply in Support of Motion to Dismiss Counts IV, V, and Prayer for Punitive

4 Damages of Plaintiff Integrated Global Concepts, Inc.'s ("IGC") Counterclaims

5 Pursuant to Rule 12(b)(6).

6                 **ARGUMENT**

7 **I.   IGC'S EXHAUSTION CLAIM SHOULD BE DISMISSED BECAUSE
8      THERE IS NO CASE OR CONTROVERSY INVOLVING IGC'S
     RESELLERS.**

9       IGC concedes that it has not pled an exhaustion claim with respect to

10 IGC itself.  (Opp. at 1, 14-15.)  Instead, IGC argues that it brought its exhaustion

11 claim "to protect its resellers and customers from subsequent charges of

12 infringement by j2," even though the claim *does not mention* IGC's resellers or

13 customers.  (Countercl., Dkt. No. 45, ¶¶ 139-152.)  In its claim, IGC alleges that a

14 case or controversy exists not because of any purported threat involving its

15 customers, but "[b]ased on Defendants' filing of their [patent infringement]

16 Counterclaims in this action and IGC's denials of the allegations in Defendants'

17 Counterclaims."  (Countercl., ¶ 151.)  IGC has now abandoned that allegation

18 (Opp. at 14-15), but its new theory is similarly meritless.  There is no case or

19 controversy involving any reseller or customer of IGC's, and therefore no basis for

20 a declaratory judgment.

21       A case or controversy sufficient to support a declaratory judgment

22 claim exists when "'there is a substantial controversy, between parties having

23 adverse legal interests, of sufficient immediacy and reality to warrant the issuance

24 of a declaratory judgment.'"  *MedImmune, Inc.* v. *Genentech, Inc.*, 549 U.S. 118,

25 127 (2007) (quoting *Maryland Casualty Co.* v. *Pacific Coal & Oil Co.*, 312 U.S.

26 270, 273 (1941)).  "The burden is on the party claiming declaratory judgment

27 jurisdiction to establish that such jurisdiction existed at the time the claim for

28

-1-

1   declaratory relief was filed and that it has continued since." *Benitec Australia, Ltd.*

2   v. *Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007).

3             In its Opposition, IGC points to a single allegation:  that in 2009, j2's

4   licensing agent sent a letter to an IGC reseller threatening to file suit for

5   infringement of the Patents-in-Suit.  (Opp. at 14, citing Countercl., ¶ 13.)  There is

6   no allegation that any such lawsuit was ever brought or that j2 has communicated

7   with any customer or reseller of IGC since 2009.  A single four-year-old letter does

8   not create a controversy "of sufficient immediacy and reality to warrant the

9   issuance of a declaratory judgment." *MedImmune, Inc.*, 549 U.S. at 127.

10            IGC's assertion that this letter establishes a controversy now, four

11  years after it was sent, is further undermined by IGC's implied license argument,

12  which is that j2 misled IGC into believing that j2 would never assert the Patents-in-

13  Suit against IGC.  (Opp. at 3-10.)  j2's supposedly misleading conduct consists in

14  large part, according to IGC, of j2's alleged inactivity between 2002 and 2012.

15  But the 2009 letter to Meixler, along with a letter that j2's licensing agent allegedly

16  sent to IGC in 2009 as well (Countercl. ¶ 12), falls in the middle of that time

17  period.  If, as IGC argues in support of its implied license claim, the 2009 letters

18  were insufficient to put IGC on notice that j2 might assert the Patents-in-Suit, they

19  can hardly have been sufficient to create a controversy substantial enough to

20  support a declaratory judgment claim.

21            Moreover, although the sole alleged case or controversy that IGC

22  identifies relates to a single reseller, Meixler, IGC apparently is asking for an

23  advisory opinion regarding exhaustion with respect to *all* of its current and future

24  resellers and customers, whoever they may be and whatever they may do at some

25  point in the future.  That is exactly the sort of nebulous request that the case or

26  controversy requirement is designed to prohibit.

27            In short, j2 is not currently asserting the Patents-in-Suit against any of

28  IGC's customers or resellers and there has been no finding that IGC has a license,

1  which would be necessary for any exhaustion claim were j2 ever to make such an

2  assertion.  Any ruling on exhaustion would be a premature and improper advisory

3  opinion.  *See MedImmune, Inc.*, 549 U.S. at 127.

4  ## II.   IGC HAS NOT ADEQUATELY PLED AN IMPLIED LICENSE.

5        As with its exhaustion claim, IGC improperly attempts to salvage its

6  implied license claim with new theories that it did not plead—its Counterclaim

7  alleged only legal estoppel (¶ 133), but IGC's opposition asserts that an implied

8  license also arose from equitable estoppel and "acquiescence."[1]  (Opp. at 3-14.)

9        As an initial matter, contrary to IGC's repeated claims, j2 is not re-

10  arguing its motion to dismiss IGC's Breach of Contract claims.  If IGC ultimately

11  succeeds on its contract claims, it will have no need for an implied license.  The

12  question before the Court now is whether IGC has adequately alleged that j2

13  somehow granted IGC an *implied* license, if the Court finds that j2's claims are not

14  covered by the *express* language of the Agreement of Understanding.  All of IGC's

15  theories fail as a matter of law.

16    ### A.   Equitable Estoppel

17        IGC argues that an implied license arose out of equitable estoppel

18  because j2 "lulled IGC into a sense of security that it would not be targeted on j2's

19  patents."  (Opp. at 6.)  This argument fails for two reasons.

20        *First*, IGC applies the incorrect legal standard.  IGC did not assert a

21  claim for equitable estoppel; it asserted an implied license claim, which can be

22  based on an estoppel theory.  "[T]he two doctrines are not coterminous."  *Wang*

23  *Labs., Inc.* v. *Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1581 (Fed. Cir. 1997).

24  Therefore IGC's cases are inapposite.  "The primary difference between the

25  estoppel analysis in implied license cases and the analysis in equitable estoppel

---

[1]   "'It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'" *Fabbrini* v. *City of Dunsmuir*, 544 F. Supp. 2d 1044, 1050 (E.D. Cal. 2008) (quoting *Car Carriers, Inc.* v. *Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984)).

-3-

1    cases is that implied license looks for an affirmative grant of consent or permission

2    to make, use, or sell: i.e., a license." *Id.*  IGC does not allege an affirmative act,

3    and its Opposition ignores that fundamental deficiency.[2]

4             *Second*, even under the standard IGC applies, its claim fails as a

5    matter of law, because IGC's assertion that it was "lulled" by j2's inaction is belied

6    by the record.  IGC argues that j2 waited ten years to file suit, from 2002 until

7    2012, but from 2005 through 2009 one or more of the patents was undergoing

8    reexamination by the U.S. Patent & Trademark Office, and in 2005 five

9    infringement cases then-pending in the Central District of California were stayed

10   pending resolution of the reexaminations.[3]  j2 cannot have been required to file a

11   new lawsuit against IGC during this time period, when the Patents-in-Suit were

12   being reexamined and five cases were already stayed.

13             In 2009, when the patents emerged from reexamination, j2 put IGC on

14   notice that it believed IGC was infringing the Patents-in-Suit.  (Countercl. ¶ 12.)

15   Thus, the delay could have been at most three years, but during that time j2 was

16   actively litigating against other, larger infringers.  A patentee is not required to sue

17   every infringer in the market simultaneously.  *Polymer Techs.* v. *Bridwell*, 103

18   F.3d 970, 975 (Fed. Cir. 1996) ("A patentee does not have to sue all infringers at

19   once.").

---

20   [2]     IGC repeatedly suggests that it was reasonable for IGC to believe j2 would
21   not sue IGC "given IGC's extensive disclosures [in connection with the Agreement
     of Understanding], j2's knowledge, and the Covenant Not to Sue."  (Opp. at 5.)
22   But this is simply a restatement of IGC's Breach of Contract Claim.  If the Court
     rules that the covenant not to sue does not extend to the patent infringement claims
23   at issue here, then IGC cannot reasonably have expected that the covenant would
     prevent IGC from being sued.  IGC's argument is an attempt to gain a benefit from
24   the Agreement of Understanding that is contrary to the terms of that agreement and
     that the parties did not contemplate.
25
     [3]     The 2005 Order in the Central District of California staying one of the
26   infringement cases, and referring (at 7) to the others, is attached as Exhibit A to
     Defendants' Request for Judicial Notice ("RJN"), filed concurrently with this brief.
27   Courts may properly take judicial notice of "court filings and other matters of
     public record."  *Reyn's Pasta Bella, LLC* v. *Visa USA, Inc.*, 442 F.3d 741, 746 n.6
28   (9th Cir. 2006).

-4-

DEFENDANTS' REPLY IN SUPPORT OF MOT. TO DISMISS

1       Moreover, IGC could not have been misled into believing that j2 had

2 granted it a license, because j2's subsidiary, Catch Curve, Inc., sued IGC for

3 infringing different patents in 2006.  Active litigation between the parties—

4 particularly where the litigation involves the same accused service—can hardly be

5 construed as "lulling" IGC to sleep.  *See Plumley* v. *Mockett*, 836 F. Supp. 2d

6 1053, 1061 (C.D. Cal. 2010) (granting summary judgment on equitable estoppel

7 claim where plaintiffs "do not, and cannot, point to any prior acquiescence on [the

8 patentee's] part, as the parties had been adversarial for years before the allegedly

9 misleading silence.").

10       IGC's own court filings establish that it was not misled by j2 and did

11 not rely on any purportedly misleading conduct by j2.  In 2010, in the *Catch Curve*

12 litigation in Georgia, IGC *admitted* that it was well aware of the Patents-in-Suit

13 and *expected to be sued* for infringing them:

> As IGC has alleged, j2 holds patents directly on its own
> and indirectly through several subsidiaries . . . .  The
> monopolization scheme employed by the j2 Defendants
> has succeeded by dividing up the patents among the
> several subsidiaries and then filing suits in several waves.
> After a competitor survives the "first round" of sham
> litigation on the AudioFax Patents . . . , *it faces a
> "second round" regarding the [Patents-in-Suit]* . . . ."

19 (RJN Ex. B[4] ("Georgia Brief") at 16, emphasis added.)

20       At the time IGC made this assertion, j2's subsidiary had sued IGC on

21 its unrelated AudioFax Patents, meaning that in accordance with IGC's theory,

22 IGC was expecting that a suit asserting infringement of the Patents-in-Suit would

23 follow.  To survive a motion to dismiss, IGC's claim must be "plausible on its

24 face."  *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 556-57 (2007).  Given IGC's

25 prior statements before the Northern District of Georgia making clear that as of

---

[4]    Courts may properly take judicial notice of "court filings and other matters of public record."  *Reyn's Pasta Bella, LLC* v. *Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).  IGC's Georgia Brief is attached as Exhibit B to Defendants' Request for Judicial Notice, which was filed concurrently with this brief.

1 | 2010 IGC was expecting to be sued, IGC's current position—that it did not expect
2 | to be sued on the Patents-in-Suit prior to 2012—is not plausible and should be
3 | rejected.

4 | **B.    Acquiescence**

5 | IGC argues that an implied license may be based on j2's
6 | "acquiescence."  (Opp. at 10-11.)  IGC fails to cite any authority suggesting that a
7 | party may establish an implied license based on "acquiescence," separate from
8 | equitable estoppel, or any case articulating what would be necessary to establish
9 | "acquiescence."  The only case IGC cites is a trademark case.  (Opp. at 10.)  In any
10 | event, assuming for the sake of argument that it is possible to establish an implied
11 | license based on "acquiescence," there is no such implied license here for the same
12 | reasons as no license was created by equitable estoppel—IGC knew perfectly well,
13 | as it told the Northern District of Georgia, that j2 did not acquiesce to IGC's
14 | infringement of its patents and that j2 always intended to enforce its intellectual
15 | property rights against IGC.

16 | **C.    Legal Estoppel**

17 | IGC's legal estoppel argument is a series of hypotheticals
18 | masquerading as a claim.  (Opp. at 11-14.)  IGC principally argues that *if* the Court
19 | rules that j2 gave IGC a release as to the '688 Patent, and *if* the Court *also* rules
20 | that j2 did not give IGC a release as to the '132 Patent (a continuation of the '688),
21 | then IGC should be given an implied license to the '132 Patent.  Whatever the
22 | merits of that argument, it is nowhere to be found in the pleading that IGC filed.
23 | IGC purports to plead that it has an implied license to all of the Patents-in-Suit, not
24 | just the '132 Patent.  IGC cannot amend its Counterclaim in its Opposition brief.
25 | *See Fabbrini*, 544 F. Supp. 2d at 1050.  To the extent IGC seeks to assert a new
26 | legal estoppel theory, it should be require to plead specific and plausible facts in its
27 | Counterclaims setting forth that theory.  *Twombly*, 550 U.S. at 556-57.

28 |

-6-

**III.    IGC FAILS TO IDENTIFY ANY BASIS FOR PUNITIVE DAMAGES.**

IGC concedes that it has not pled any basis for punitive damages, devoting only a single paragraph of its Opposition brief to the issue.  (Opp. at 15.) IGC asserts that the Court should "keep[] open the prospect of punitive damages" but identifies no basis to do so.  (*Id*.)  IGC makes a conclusory reference to 35 U.S.C. § 285, but IGC has a separate request for relief under Section 285, and cites no authority suggesting that Section 285 creates a separate basis for punitive damages.  Parties must plead a legal basis for punitive damages or face dismissal pursuant to Fed. R. Civ. P. 12(b)(6).  *See Davis* v. *Capitol Records, LLC*, No. 12-cv-1602 YGR, 2013 WL 1701746, at *7 (N.D. Cal. Apr. 18, 2013) (dismissing punitive damages claim without leave to amend where the claim lacked any legal basis).  IGC's prayer for punitive damages should be dismissed with prejudice.

## **<u>CONCLUSION</u>**

For the foregoing reasons, j2 respectfully requests that the Court dismiss Counts IV and V and the Prayer for Punitive Damages IGC's Counterclaims with prejudice.

Dated:  June 14, 2013                          Respectfully submitted,

/s/ Robert A. Sacks
Robert A. Sacks (SBN 150146)
Brian R. England (SBN 211335)
Edward E. Johnson (SBN 241065)
SULLIVAN & CROMWELL LLP
1888 Century Park East, Suite 2100
Los Angeles, California 90067-1725
(310) 712-6600
(310) 712-8800 facsimile

Frank L. Bernstein (SBN 189504)
KENYON & KENYON LLP
1801 Page Mill Road, Suite 210
Palo Alto, California 94304-1216
(650) 384-4700
(650) 384-4701 facsimile

*Attorneys for Defendants j2 Global, Inc. and Advanced Messaging Technologies, Inc.*

-7-